IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-00159-CMA-STV

KATHRYN L. JUDSON,

    Plaintiff,

v.

WALGREENS CO.,
MITCHELL BRAMLAGE, and
JAMIE GLENN,

    Defendants.

---

**ORDER ADOPTING IN PART AND REJECTING IN PART
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on the September 10, 2020 Recommendation of United States Magistrate Judge (Doc. # 37), wherein Magistrate Judge Scott T. Varholak recommends denying Defendants' Motion to Dismiss Plaintiff's Fourth, Sixth, and Seventh Claims for Relief ("Motion to Dismiss") (Doc. # 14). Defendants Walgreens Co. ("Walgreens"), Mitchell Bramlage, and Jamie Glenn (together, "Defendants") timely objected to the Recommendation. For the following reasons, the Court partially adopts and partially rejects the Recommendation.

    **I.**    **BACKGROUND**

Judge Varholak described the factual background of this case in the Recommendation (Doc. # 37 at 1–4), which is incorporated herein by reference. *See* 28

U.S.C. § 636(b)(1)(B) (2018); Fed. R. Civ. P. 72(b). The Court therefore recounts only the facts[1] necessary to address Defendants' objections to the Recommendation.

Plaintiff, Dr. Kathryn L. Judson, is a female pharmacist employed by Walgreens. On or about March 18, 2019, Dr. Judson transferred from a Walgreens store in Maryland to a Walgreens store in Clifton, Colorado ("Clifton Store"). (Doc. # 1 at ¶ 25.) Almost immediately, older, male customers began making unwanted sexual comments and sexual advances towards Dr. Judson. (*Id.* at ¶ 26.) Dr. Judson raised her concerns with her Store Manager, Defendant Glenn, and made clear that she did not welcome and found the sexual harassment to be offensive. Defendant Glenn responded that Dr. Judson "[s]hould take it as a compliment." (*Id.* at ¶ 28.) Defendant Bramlage reprimanded Ms. Judson for referring to the male customers as "old" and took no action related to the customers' sexual harassment of Dr. Judson. (*Id.* at ¶ 30.)

On April 6, 2019, Dr. Judson sent an email to Defendant Bramlage that reported "the most disgusting" incident of sexual harassment of the many she had encountered. Dr. Judson noted that Defendant Glenn had not supported her at all after she previously reported the sexual harassment. (*Id.* at ¶¶ 32–34.) She alleges that Defendant Glenn, Defendant Bramlage, and Defendant Walgreens took no action to stop the sexual harassment.

In May 2019, Dr. Judson requested a transfer from the Clifton Store because the sexual harassment was causing her mental and emotional health issues. (*Id.* at ¶ 36.)

---

[1] This Court draws the following facts from the Complaint and presumes they are true for purposes of the instant Motion to Dismiss. *See Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).

2

Defendant Bramlage rejected Dr. Judson's request for a transfer and stated that he wanted Dr. Judson to stay for the six months she had committed to the position at the Clifton Store. Dr. Judson proposed to Bramlage that she stay at the Clifton Store for six more weeks and then transfer in July 2019 to an open pharmacist position in the Denver area. Defendant Bramlage rejected her request. (*Id.* at ¶¶ 37–42.)

Dr. Judson had numerous communications with Defendants Bramlage and Glenn about the persisting sexual harassment from customers. Neither Defendant took any actions to stop the harassment.

On or about June 27, 2019, Dr. Judson was again sexually harassed by a Walgreens customer she assisted in the drive-thru. (*Id.* at ¶ 43.) Shaken by the harassment, Dr. Judson left the window, sat down, and cried. Dr. Judson reported the sexual harassment to Defendant Glenn, who responded, "You should quit wearing skirts. You know that's why it is happening." (*Id.* at ¶¶ 44–47.)

Dr. Judson also reported the incident to the Walgreens Human Resources Department ("HR Department"). (*Id.* at ¶ 49.) The HR Department sent Dr. Judson a copy of the company's dress code and instructed her to be sure she was following it. Dr. Judson felt insulted and humiliated, as she always dressed professionally for work in compliance with the dress code. The HR Department also instructed her to document the customer's name each time she was sexually harassed. (*Id.* at ¶¶ 50–52.)

In August 2019, Dr. Judson shared with a Walgreens colleague that she was investigating her rights with regards to the sexual harassment and hostile work

environment. Plaintiff believes that this colleague shared this information with Defendant Glenn, because Walgreens then began retaliating against Dr. Judson through negative performance reviews. (*Id.* at ¶¶ 54–55.)

On September 9, 2019, Walgreens issued Plaintiff a Step 1 Written Violation for allegedly violating HIPPA in an email she sent to Defendant Bramlage. (*Id.* at ¶¶ 56–58.) Plaintiff alleges that her email concerned proposed efficiencies and improved customer care at the store pharmacy level and did not violate HIPPA. Next, on or about September 9, 2019, Walgreens issued Plaintiff a Step 2 Written Violation for allegedly violating a safety procedure by pulling pharmaceuticals herself and filling several prescriptions. Plaintiff alleges that her conduct did not violate any safety procedures and the Step 2 Written Violation was issued in retaliation for Plaintiff's complaints of sexual harassment. (*Id.* at ¶¶ 61–65.)

Following the exhaustion of her administrative remedies, Plaintiff initiated the instant action with her Complaint and Jury Demand on January 20, 2020. (Doc. # 1.) Therein, Plaintiff asserts the following seven claims: (1) sex discrimination and harassment based on gender under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.* ("Title VII") against Walgreens; (2) retaliation under Title VII against Walgreens; (3) sex discrimination and harassment based on gender under the Colorado Anti-Discrimination Act, as amended, Colo. Rev. Stat. § 24-34-402, *et seq.* ("CADA") against Walgreens; (4) aiding and abetting a sexually hostile work environment under CADA against Bramlage and Glenn; (5) retaliation under CADA against Walgreens; (6) aiding and abetting retaliation under CADA against Bramlage

4

and Glenn; and (7) common law outrageous conduct against all Defendants. *See generally* (*id.*).

Defendants filed the instant Motion to Dismiss (Doc. # 14) on March 10, 2020. The Court referred the Motion to Judge Varholak, who issued his Recommendation on September 10, 2020. (Doc. # 37.) Defendants timely objected to the Recommendation. (Doc. # 38.) Plaintiff did not file a response to Defendants' Objections.

## II.     LEGAL STANDARDS

### A.     REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, however, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.")).

**B.     FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted). If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

Two questions are at issue in Defendants' Objections to the Recommendation: (1) whether Plaintiff may bring aiding and abetting claims against Defendants Bramlage and Glenn when they are alleged to have acted only within the course and scope of their employment for Defendant Walgreens; and (2) whether Plaintiff's outrageous conduct claim is preempted by the Colorado Workers' Compensation Act.

### A. AIDING AND ABETTING CLAIMS AGAINST INDIVIDUAL DEFENDANTS

In his Recommendation, Judge Varholak concluded that Plaintiff may assert aiding and abetting claims against Defendants Bramlage and Glenn individually under CADA, based on the same conduct underlying Plaintiff's claims against Defendant

7

Walgreens. Defendants object to this conclusion, arguing that Plaintiff's aiding and abetting claims against Defendants Bramlage and Glenn must be dismissed. The Court agrees with Defendants.

It is well established that, "[a]s an inanimate entity, a corporation must act through agents." *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 462 (Colo. App. 2003). Courts, including the Tenth Circuit, have therefore recognized that a "corporate employee cannot conspire with his or her corporate employer; that would be tantamount to a person conspiring with himself." *Royal Airline Linen v. Weinstein*, No. B186122, 2007 WL 178896, at *6 (Cal. App. Jan. 25, 2007) (quotation omitted); *see Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 51–52 (10th Cir. 1963) (applying Colorado law in holding that a corporation and its employees could not conspire to tortiously interfere with or breach a contract). For this reason, courts apply the intracorporate conspiracy doctrine, which provides that "a corporation cannot conspire with its own agents or employees" because the corporation and its employees "are members of the same collective entity" and, therefore, "there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.,* 926 F.2d 505, 509–10 (6th Cir. 1991); *see also Zelinger,* 316 F.2d at 51–52 (explaining that, under Colorado law, *"*a corporation and its employee do not constitute the 'two or more persons' required for a civil conspiracy."). "[S]ince a corporation can act only through its employees, the element of concert is missing in the aiding and abetting context just as it would be in a conspiracy context." *Applied Capital, Inc. v. Gibson*, No.

8

Civ 05–98 JB/ACT, 2007 WL 5685131, at *12 (D.N.M. Sept. 27, 2007) (quotation omitted).

In the instant case, Plaintiff asserts aiding and abetting claims against Defendants Bramlage and Glenn pursuant to the following provision of CADA:

> (1) It shall be a discriminatory or unfair employment practice: . . .
>
> (e) For any person, whether or not an employer, an employment agency, a labor organization, or the employees or members thereof: . . .
>
> (I) To aid, abet, incite, compel, or coerce the doing of any act defined in this section to be a discriminatory or unfair employment practice[.]

Colo. Rev. Stat. § 24-34-402. The parties have not cited, nor has this Court found, any authority considering whether a plaintiff may bring a CADA aiding and abetting claim against a supervisor for conduct within the scope of the supervisor's employment for a corporate employer.[2] However, the Court finds persuasive the reasoning of the Kentucky Court of Appeals in *Cowing v. Commare*, 499 S.W.3d 291, 295 (Ky. Ct. App. 2016), *as modified* (Sept. 9, 2016).

In *Cowing*, the Kentucky Court of Appeals considered whether an aiding and abetting claim brought against a corporation's managing agent pursuant to the Kentucky Civil Rights Act was barred by the intracorporate conspiracy doctrine. The managing-agent defendant in *Cowing* argued that, as a matter of law, he could not aid and abet his corporate employer in its allegedly discriminatory employment practices because he

---

[2] In her Response to the Motion to Dismiss, Plaintiff cites to *Mondragon v. Adams Cty. Sch. Dist. No. 14*, No. 116CV01745LTBKMT, 2017 WL 733317, at *13 (D. Colo. Feb. 24, 2017), to support the viability of her aiding and abetting claims. (Doc. # 26 at 4–5.) However, the court in *Mondragon* did not consider the question raised by Defendants in this case; it merely considered the sufficiency of the allegations of the plaintiff's aiding and abetting claim. *See* 2017 WL 733317, at *13.

and the corporation were members of the same collective entity. *Id.* at 293. The court found that the plaintiff had not argued or alleged that the managing-agent defendant acted outside his capacity as the corporation's agent at any time or that the agent's conduct was motivated by his own personal interest independent of the corporate entity's goals; therefore, the managing agent's actions were solely attributable to the corporation. Applying the principle that, "like conspiracy, the act of aiding and abetting provides for secondary liability based on the conduct of a multiplicity of actors acting in concert[,]" the court concluded that the requirement of a multiplicity of actors had not been met and the aiding and abetting claim must fail. *Id.* at 295.[3]

In this case, Plaintiff's allegations against Defendants Bramlage and Glenn and Walgreens are one and the same. Plaintiff alleges that Walgreens is liable for sex discrimination, harassment, and retaliation based on the conduct of Defendants Bramlage and Glenn. *See, e.g.*, (Doc. # 1 at ¶¶ 94–95) (alleging that Walgreens is liable for actions taken by Bramlage and Glenn, including subjecting Plaintiff to harassment by customers, condoning and tolerating harassment by ignoring Plaintiff's complaints, and retaliating against Plaintiff through poor performance reviews and refusal to transfer her). The Complaint does not allege that either Defendant Bramlage or Defendant Glenn acted outside the course and scope of their employment as Plaintiff's former supervisors at any times relevant to the Complaint. Instead, the allegations in the

---

[3] *See also Hubbell v. Better Bus. Bureau of MN*, No. 09-CV-1173 JMR/SRN, 2009 WL 5184346, at *4 (D. Minn. Dec. 21, 2009) (concluding that "an individual supervisor and board member of the employer cannot be liable for aiding and abetting unless the individual is acting in an individual capacity, outside the scope of his or her employment, or the individual is alleged to have aided other employees' discrimination.").

10

Complaint lead this Court to conclude that Defendants Bramlage and Glenn and Defendant Walgreens are not distinct legal actors capable of aiding and abetting one another; instead, for the purposes of liability, they are the same entity.

The Court's conclusion herein is consistent with well-established principles of agency law, as well as Colorado case law that has found CADA liability where a separate legal entity aided and abetted the employer's discriminatory practice. *See, e.g.*, *Colorado C.R. Comm'n v. Travelers Ins. Co.*, 759 P.2d 1358, 1369 (Colo. 1988) (holding that insurance company aided and abetted employer's discriminatory practice by issuing insurance policy that lacked coverage for pregnancy-related expenses). To conclude otherwise in this case would invite individual liability against supervisory employees for any allegedly discriminatory actions they took within the scope of their employment. *See Hubbell*, 2009 WL 5184346, at *4 (cautioning that "[w]ithout such a rule, all supervisors could be held individually liable for discrimination"). This Court declines to read such sweeping liability into the statute; like the Kentucky Court of Appeals concluded in *Cowing*, "[n]othing in [CADA] appears to impose aiding-and-abetting liability upon corporations and their employees for routine, collaborative business decisions that are later challenged as discriminatory." 499 S.W.3d at 295.

Accordingly, Plaintiff's aiding and abetting claims against Defendants Bramlage and Glenn fail. The Motion to Dismiss is granted with respect to Claims 4 and 6.

**B.    WHETHER THE COLORADO WORKERS' COMPENSATION ACT PREEMPTS PLAINTIFF'S OUTRAGEOUS CONDUCT CLAIM**

Next, Defendants assert that Judge Varholak erred in concluding that Plaintiff's outrageous claim is not preempted by the Colorado Workers' Compensation Act

("CWCA"). The Court disagrees with Defendants.

Colorado's workers' compensation system establishes the benefits available to workers injured in the course and scope of their employment and the procedures for obtaining those benefits. *Duran v. Indus. Claim Appeals Office,* 883 P.2d 477, 479 (Colo. 1994). The CWCA exclusive-remedy provisions bar civil actions in tort against an employer for injuries that are compensable under the CWCA. *See* Colo. Rev. Stat. §§ 8–41–102 and 8–41–104. As relevant in the instant case, an employee is entitled to workers' compensation in all cases where, "the injury . . . is proximately caused by an injury . . . arising out of and in the course of the employee's employment and is not intentionally self-inflicted." Colo. Rev. Stat. § 8–41–301(1).

The phrases "arising out of" and "in the course of" are not synonymous, and a claimant must meet both requirements to be covered by the CWCA. *Younger v. City & County of Denver,* 810 P.2d 647, 649 (Colo. 1991). The term "arises out of" refers to the origin or cause of an injury. *Deterts v. Times Publ'g Co.,* 552 P.2d 1033, 1036 (Colo. App. 1976). An injury "arises out of" employment when it has its origin in an employee's work-related functions and is sufficiently related to those functions to be considered part of the employee's employment contract. *Popovich v. Irlando*, 811 P.2d 379, 383 (Colo. 1991).

The parties to this case do not dispute that Plaintiff's alleged injury was sustained in the course of her employment; instead, they dispute whether the workplace harassment alleged by Plaintiff arises out of her employment. Defendants argue that the alleged harassment arises out of Plaintiff's employment because Plaintiff met and

interacted with the male customers who harassed her because of her position as a Walgreens pharmacist, Plaintiff did not have a private relationship with said customers outside of work, and the harassment took place during Plaintiff's work hours. Defendants assert that the alleged harassment is either inherently connected to Plaintiff's employment or it is neutral, neither of which can provide the basis for a tort claim under the CWCA, pursuant to *Horodyskyj v. Karanian*, 32 P.3d 470 (Colo. 2001).

The Court acknowledges that neither party has cited, and this Court is unaware of, any case that addresses the applicability of the CWCA to workplace harassment **by a customer**. However, the Colorado Supreme Court's decision in *Horodyskyj*, 32 P.3d 470, is instructive in this case.

In *Horodyskyj*, the Colorado Supreme Court explained the test for determining whether an injury arises out of employment for the purposes of the CWCA, which was developed in cases involving co-employee sexual assault and sexual harassment:

> Under the test, willful assaults by co-employees are divided into three categories: (1) those assaults that have an inherent connection with the employment; (2) those assaults that are inherently private; and (3) those assaults that are neutral. Both the first and third categories of assaults arise out of the employment for the purposes of the Workers' Compensation Act and therefore prevent an employee from suing his or her employer in tort for injuries based on such assaults. Only the second category of injuries, inherently private assaults, does not arise out of employment and thus tort claims based on such assaults are not barred by workers' compensation exclusivity.

*Id.* at 475 (citing *Popovich,* 811 P.2d at 383). The court explained that the second category—inherently private assaults, which are not covered by the CWCA—has been expanded "to include those [assaults] in which the assailant and victim did not know each other prior to, or associate outside of, the employment and where the victim was

13

specifically chosen or targeted." *Id.* at 477. The court noted that, in those cases, "the nexus between the assault and the employee's work duties is insufficient to sustain a determination that the harassment arose out of employment." *Id.* The court further explained that "sexual harassment ordinarily does not fall into either category of assaults that are compensable under the Workers' Compensation Act." *Id.* at 478.

Applying that framework to the facts before it, the *Horodyskyj* court concluded that the alleged sexual harassment by a co-employee did not arise out of the plaintiff's employment. *Id.* The court concluded that the alleged harassment was specifically targeted and was private and personal in nature, despite the fact that the harassment took place exclusively during regular work hours. *Id.* at 473, 478. The court rejected the lower court's conclusion that the injury arose out of the employment because the parties did not know each other prior to the employment and because the plaintiff was subject to the defendant's behavior only because of the employment. *Id.* at 478. The Colorado Supreme Court concluded, therefore, that the plaintiff's common-law tort claims were improperly dismissed as being barred by the CWCA's exclusive-remedy provisions. *Id.* at 478.

Plaintiff's allegations in this case are analogous to those in *Horodyskyj*. Construing Plaintiff's allegations in the light most favorable to her, Plaintiff alleges that the harassment took place during work hours, that she did not have a relationship with any of the customers who harassed her outside of work, and that the harassment was targeted. *See* (Doc. # 1 at ¶¶ 26, 28, 32, 43, 47, 50). Pursuant to the reasoning of the Colorado Supreme Court in *Horodyskyj*, Plaintiff has alleged an injury that is inherently

private and, therefore, does not arise out of her employment. Thus, her outrageous conduct claim is not barred by the CWCA's exclusive-remedy provisions. Defendant's objections to the contrary are overruled.

The Recommendation advised the parties that specific written objections were due within fourteen days after being served with a copy of the Recommendation. (Doc. # 37 at 18.) Despite this advisement, Defendants failed to object to the Recommendation to the extent it concludes that Plaintiff has plausibly pleaded an outrageous conduct claim. *See* (*id.* at 16–17). In the absence of a timely objection, "the district court may review a [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)). After reviewing the Recommendation's findings that relate to the sufficiency of Plaintiff's allegations with respect to her outrageous conduct claim, in addition to applicable portions of the record and relevant legal authority, the Court is satisfied that the Recommendation is sound and not clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). Accordingly, the Court affirms and adopts the Recommendation's findings and conclusions regarding the sufficiency of Plaintiff's outrageous conduct allegations and denies the Motion to Dismiss to the extent it seeks dismissal of such claim.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that the September 10, 2020 Recommendation of United States Magistrate Judge (Doc. # 37) is ADOPTED IN PART AND REJECTED IN PART. The Recommendation is ADOPTED to the extent it

concludes that Plaintiff's outrageous conduct claim (Claim 7) is not barred by the Colorado Workers' Compensation Act and that Plaintiff has plausibly stated an outrageous conduct claim against Defendants. It is REJECTED to the extent it recommends that Plaintiff's aiding and abetting claims against Defendants Bramlage and Glenn (Claims 4 and 6) should proceed. It is

FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's Fourth, Sixth, and Seventh Claims for Relief (Doc. # 14) is GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED as to Claims 4 and 6; such claims are DISMISSED WITH PREJUDICE.[4] The Motion is DENIED as to Claim 7.

DATED: March 31, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[4] There is no indication in the Complaint, Response to the Motion to Dismiss, or in Plaintiff's lack of a response to Defendants' Objection to the Recommendation, that Defendants Bramlage and Glenn acted outside of the scope of their employment at any time relevant to this case. In fact, Plaintiff's allegations confirm that the individual defendants were acting within the scope of their employment. Accordingly, the Court finds that amendment of the Complaint with respect to this claim would be futile. *See McKinney v. Okla. Dep't of Human Servs.,* 925 F.2d 363, 365 (10th Cir. 1991) (explaining that "dismissal under Rule 12(b)(6) is not reversible error when it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing [her] an opportunity to amend [her] complaint would be futile.") (citation and internal quotation marks omitted).